The **KEMODE MANUFACTURING CO.,**
Inc., and Frank A. Petraglia

v.

The **UNITED STATES.**
No. 16–62.

United States Court of Claims.
June 11, 1965.

---

**316**

Harry Price, New York City, for plaintiffs.

George P. Hoare, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM.

This patent case was referred to Trial Commissioner Donald E. Lane with directions to report findings of fact and recommendations for conclusions of law. The commissioner has done so in a report filed September 29, 1964, said report being unfavorable to the plaintiffs. On October 14, 1964, plaintiffs filed a notice of intent to except to the commissioner's report, but plaintiffs have not filed any exceptions or brief within the extensions of time allowed for that purpose.

On February 25, 1965, plaintiffs filed a motion to dismiss *without* prejudice. On April 7, 1965, defendant filed an opposition to plaintiffs' motion and filed a motion urging the court to adopt the commissioner's report. The court has considered these two motions, the opposition, and the commissioner's report and concludes that this case be dismissed *with prejudice.*

Since the court is in agreement with the opinion, findings and recommendation of the trial commissioner, as herein set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiffs are, therefore, not entitled to recover and their motion to dismiss without prejudice is denied, and plaintiffs' petition is dismissed with prejudice.

OPINION OF COMMISSIONER

This suit involves a claim for compensation for the alleged unauthorized use and manufacture by and for the U. S. Government of the subject matter disclosed and claimed in U. S. Letters Patent 2,589,509, which issued to Frank A. Petraglia March 18, 1952, on an application filed May 14, 1948. The suit is brought under 28 U.S.C. § 1498. It is found that the patent is invalid, and that it has not been infringed by any soldering iron structures manufactured for or used by defendant.

The subject matter of the patent in suit, hereinafter referred to as the '509 patent, concerns a soldering iron having a self-contained heating unit which does not require connection to an external source of energy. The heating unit is activated when punctured by release of a spring-operated firing pin. The '509 patent has two claims, both of which have been relied upon by plaintiffs. A detailed description of the patented structure is provided in the accompanying findings of fact. The accused structure charged with the infringement of both of the claims of the '509 patent also comprises a soldering iron construction having a self-contained heat generating unit which is activated by the force of a spring-operated firing pin. The structure of the accused iron is illustrated in the drawing reproduced in finding 20. Defendant has admitted the procurement

of at least one of the accused structures within the statutory recovery period.

Defendant has raised a number of defenses to the charge of patent infringement, including allegations that the '509 patent is invalid in view of prior art, that the patent claims lack an adequate disclosure and are indefinite, and that even if the patent is valid the accused device does not infringe either of the two claims in suit. It has also been asserted by defendant that, contrary to plaintiffs' allegation, there has been no showing of commercial success of the patented structure.

In urging invalidity as a defense, defendant has referred to various prior art patents * and to the "Heatron Stirrer," a device which plaintiffs admit was in public use prior to the invention of the '509 device, to show that the development of the soldering iron disclosed in the '509 patent did not amount to patentable invention.

The Heatron stirrer, a device purchased from a New York store by the patentee, is an appliance designed to heat liquids in a container. The Heatron device, illustrated in finding 9, contains every element of the patented structure in almost identical detail with the exception of a soldering tip extending downwardly from the heater receptacle. The Heatron device, by Petraglia's own admission, inspired him to construct the '509 soldering iron. The question thus presented, so far as the Heatron device is concerned, is whether there was patentable invention involved in the addition of a tip thereto to produce a soldering iron, sufficient to enable the plaintiffs to avoid the statutory bars to patentability

* PRIOR ART CITED BY PATENT OFFICE

| Patentee | Patent No. | Date |
|---|---|---|
| A. G. Kaufman | 712,938 | 1902 |
| C. B. Rodgers | 761,010 | 1904 |
| Gabriel | 820,638 | 1906 |
| J. C. Tomaszewski | 1,160,343 | 1915 |
| J. Szotak | 1,172,405 | 1916 |
| France | 533,039 | 1921 |
| Great Britain | 209,479 | 1924 |
| A. Schwartz | 1,573,872 | 1926 |
| L. Jarkovsky | 1,602,266 | 1926 |
| W. M. Minto | 1,826,562 | 1931 |
| D. H. Bottrill | 1,838,357 | 1931 |
| R. H. Hornack | 1,928,129 | 1933 |
| D. Lakenbach | 2,182,636 | 1939 |
| A. E. Gessler | 2,289,008 | 1942 |
| Great Britain | 587,496 | 1947 |

ADDITIONAL PRIOR ART NOT CITED BY THE PATENT OFFICE

| | | |
|---|---|---|
| W. Mitchell | 869,140 | 1907 |
| D. La Cour, et al. | 1,417,075 | 1922 |
| J. H. Gravell | 1,434,538 | 1922 |
| D. B. La Cour | 1,498,323 | 1924 |
| D. H. Bottrill | 1,607,508 | 1926 |
| Germany | 586,016 | 1933 |
| F. Eggert, et al. | 2,020,292 | 1935 |
| C. C. Boyd | 2,121,728 | 1938 |
| France | 856,014 | 1940 |
| Patent of Addition to 856,014 | 50,500 | 1940 |
| L. P. Young | 2,213,438 | 1940 |
| O. G. Bennett | 2,500,790 | 1950 (filed 1946) |
| O. G. Bennett | 2,531,548 | 1950 (filed 1947) |

recited in 35 U.S.C. § 102(a) and/or 35 U.S.C. § 103 which provide:

§ 102. Conditions for patentability; novelty and loss of right to patent

A person shall be entitled to a patent unless—

(a) the invention was *known or used* by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, * * *. (Emphasis added.)

§ 103. Conditions for patentability; non-obvious subject matter

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

■ It is concluded that the soldering iron construction disclosed and claimed in the '509 patent fails to meet the standards of patentability specified in the above-quoted statutes. The patented structure represents but an immaterial modification of the Heatron device. The adaptation of a known device in a manner which produces no unusual result and solves no problem of recognized difficulty does not constitute patentable invention. See E. J. Brooks Co. v. Stoffel Seals Corp., 266 F.2d 841 (2d Cir. 1959).

■ The obviousness of the '509 structure is underscored when other prior art is considered. The early Mitchell patent 869,140 discloses a self-heated soldering iron having a thread-ably detachable tapered tip. It would have been obvious to one of ordinary skill in 1948 to substitute the Mitchell tip for the flat-bottomed receptacle of the Heatron device. It would likewise have been obvious to combine the tapered soldering tip of the Mitchell patent with the firing mechanism and connected cartridge assembly of the Bennett patent 2,531,548 (filed in 1947) to produce a structure equivalent to that claimed in the '509 patent. The early Bottrill patent, 1,607,508, prior British patent 209,479, and prior French patent 533,039 all disclose soldering irons having self-contained heating units, and while none of them, either alone or in combination, show all of the pertinent features of the patented structure, they do demonstrate that the construction of a soldering iron having a self-contained heat generating means was not a novel concept at the time Petraglia disclosed the device described and claimed in the '509 patent.

■ There is evidence to the effect that Petraglia along with others later developed a modified soldering iron, and that defendant procured and used substantially the same soldering iron construction as was later developed and sold by plaintiffs. Neither the specification nor the claims of the '509 patent in suit mention these modified features, and it is well settled that a feature or features not disclosed or claimed in a patent, even though they may represent a patentable invention, cannot form a basis for patentability and do not come within the protection of the patent grant. Circuit Judge Soper stated in Sears, Roebuck & Co. v. Minnesota Mining & Mfg. Co., 243 F.2d 136 (4th Cir. 1957):

It is not sufficient for a patent to suggest a field for further experimentation; to be valid it must itself disclose the essential elements of the discovery so that persons skilled in the art may practice it.

■ The question of commercial success has been raised in this case and defendant has gone to some length in

discussing this issue. It is unnecessary to consider to what extent if any the '509 structure enjoyed commercial success since it was clearly anticipated by the prior art, and it is well settled that commercial success cannot validate a patent where patentable invention is lacking. See Audio Devices, Inc. v. Armour Research Foundation of Illinois Institute of Technology, 293 F.2d 102 (2d Cir. 1961), L. M. Leathers' Sons v. Goldman, 252 F.2d 188 (6th Cir. 1958). The decisions clearly indicate that it is only in those cases where the question of patentable invention is in doubt that evidence of commercial success can be persuasive of patentability.

■ In further contesting the validity of the claims of the '509 patent in suit, defendant has pointed to certain imperfections in the claim drafting; namely, that there is no antecedent for the term "said firing pin," and that the claims specify that the plunger, rather than the contact pin attached thereto as is shown in the specification, is the member which punctures the containing means. It is alleged these defects in the claim drafting render the claims indefinite and invalid. It is settled law that the claims of a patent in order to be valid must define the patented invention with sufficient clarity that the metes and bounds thereof can be determined, but this requirement that the invention be pointed out with particularity does not preclude some latitude in claim interpretation, particularly where the meaning of what otherwise may be confusing recitals in the claims can be ascertained as here by referral to the specification and drawings. See Lincoln Stores, Inc. v. Nashua Mfg. Co., 157 F.2d 154, 158 (1st Cir. 1946).

■■ Defendant has challenged plaintiffs' charge of infringement of the claims of the '509 patent primarily on the ground that the claims allegedly contain three limitations which distinguish the claimed soldering iron device from the accused structure. These limitations are (1) that the firing mechanism of the '509 device must *puncture* the heat cartridge, (2) that the contact pin of the '509 device is slidable through the bore in the cap, and (3) that the spring means of the '509 device does not extend into the handle. In the accused structure the heat cartridge is not and must not be punctured, the contact pin is restrained by a plate from sliding through the bore in the cap, and the spring means extends essentially through the handle. It is thus seen that in each of the three instances adverted to above there is a clear difference between the claimed device and the accused structure. The limitation to a structure in which the firing mechanism *punctures* the heat cartridge is of particular significance because the term puncture was inserted in the claims in place of "detonate" to avoid a rejection by the Patent Office examiner on the ground that the term "detonate" was "inapt and inaccurate." It is thus clear that the term *puncture* was purposely inserted into the claims and was intended to convey a specific meaning; namely, that the heat cartridge must be pierced and the contents thereof exposed to the atmosphere. Such a meaning is the only one that can be ascribed to the term puncture which is consistent with other statements in the specification and the prosecution history. To a lesser extent there is indication in the prosecution history that the remaining two limitations upon which defendant relies in attempting to distinguish the accused structure from the claimed device were inserted in order to obtain allowance of the claims in the Patent Office. Limitations which are placed in claims during prosecution before the Patent Office have special significance because they point out definitively the bounds of the invention and may be looked upon as a disclaimer of that which they do not clearly include. Martin v. United States, 86 Ct.Cl. 311, 379 (1938). Claims having been narrowed to obtain allowance cannot be given the broad construction to which they might otherwise have been entitled. Roemer v. Peddie, 132 U.S. 313, 317, 10 S.Ct. 98, 33 L.Ed. 382 (1889). Because

of the limitations contained in the '509 patent and the manner in which they were inserted, we conclude that there is no infringement by the accused structure.

While the accused structure and later soldering iron models produced by plaintiff Kemode Manufacturing Co. are substantially the same, the issue of infringement is confined to whether the claims of the '509 patent point up the elements of the accused device. See Bauer et al. v. Yetter Mfg. Co., Inc., 205 F.Supp. 904, 912 (S.D.Ill.1962). As pointed out above, the claims of the '509 patent are limited to such an extent that they do not embrace the accused structure.

In summary, it is found that the two claims of patent No. 2,589,509 are invalid in view of the prior art, and that if valid, these patent claims have not been infringed by the soldering iron constructions procured or used by defendant.