**PACIFIC TECHNICA CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 424–81C.**

United States Claims Court.

March 28, 1983.

As Amended March 29, 1983.

---

James V. Ryan, Rogers & Wells, New York City, for plaintiff.

James D. Stokes, Jr., Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ORDER

COLAIANNI, Judge.

1. Allowing plaintiff's depositions in foreign countries; and

2. Requiring defendant to pay its own costs with regard to attending the depositions.

On December 23, 1982, plaintiff notified defendant that it intended to take the depositions of Dr. Joseph A. Cooke, Mr. Richard Topping, Mr. Ronald Goldsmith, and Dr. Hans Pasman. The depositions were scheduled to begin on February 21, 1983, at plaintiff's counsel's offices in London, England.

On January 20, 1983, defendant filed a motion to vacate plaintiff's notice of depositions in Europe. Defendant's motion contends that the notice for depositions in London was contrary to the letter and spirit of USCCR 26, that the depositions were burdensome, oppressive, and wasteful of defendant's resources, and, finally, that the deposition of Dr. Joseph A. Cooke was rendered moot by his deposition in Washington, D.C., on January 6, 1983.

Defendant questions the relevancy of depositions which seek to unearth commercial success information that is totally related to a foreign country, and in no way touches the United States, for use in resolving the question of nonobviousness of a United States-granted patent. Specifically, defendant argues—

[F]rom the limitation of the territorial scope of a United States patent to the geographic area of the United States, 35 U.S.C. §§ 100(c) and 154, that secondary considerations of an extra-territorial nature, such as "commercial success" abroad under a foreign patent, are irrelevant to the determination of obviousness of a claim of a domestic patent.[1]

In sum, defendant argues that just as the effectiveness of United States patents are restricted to the territorial limits of the United States, evidence of commercial success should also be limited to that which occurs within the same territorial limits.

Defendant distinguishes the plethora of cases which permit the use of commercial success data in instances which deal with foreign licensees of United States patents. *See Illinois Tool Works, Inc. v. Continental Can Co.,* 273 F.Supp. 94, 117 (N.D.Ill.1967), where the court stated:

ITW introduced evidence of the widespread commercial success of its cottage cheese containers over the last several years. Extensive sales of these containers have been made by ITW and by its licensees, both domestic and foreign. Several hundreds of thousands of dollars in royalties have been paid to ITW by the licensees. In general, ITW urges that this evidence is relevant as a "secondary factor" to show the nonobviousness of the '213 invention. It is customary to evaluate and apply evidence of such secondary factors as commercial success, long-felt need, and failure of others in this fashion, and it has been generally stated that '[t]hese factors [are] entitled to weight in determining whether the improvement amounted to invention and should, in a close case, tip the scales in favor of patentability.' [Citations omitted.]

Defendant also differentiates plaintiff's request from cases which deal with the importation of foreign-made accused devices into the United States. *See Douglas v. United States,* 206 Ct.Cl. 96, 510 F.2d 364 (1975). The Government argues from the

---

1. See defendant's January 20, 1983, motion to vacate plaintiff's notice of depositions in Europe, at 3.

172

distinctions it makes that plaintiff has failed to show that sales which occur totally outside the United States are relevant to the issues before the court.

Plaintiff filed an opposition to defendant's motion on January 28, 1983. Plaintiff argues that the noticed depositions are reasonably calculated to develop relevant evidence or lead to the discovery of admissible evidence and are not burdensome, oppressive, and wasteful of defendant's resources. Thus, plaintiff urges that the depositions should be allowed.

Plaintiff questions the accuracy of defendant's attempts to distinguish its present request from the cases cited in support of its motion and, as well, points out that the defendant has not cited a single case which holds that sales in a foreign country are not admissible on the issue of commercial success. Two of the proposed depositions involve representatives of the British Ministry of Defense, and the other, an advisor to the Dutch Government on Munitions Systems.

Defendant filed a reply to plaintiff's opposition on February 4, 1983, and again stressed that the depositions would not lead to admissible evidence, and that, therefore, they were irrelevant to the present proceedings. In addition, defendant maintained that the projectiles covered by the patent in suit are also protected by British and Dutch patents owned by the plaintiff, and the sale success, which plaintiff has enjoyed in England and Holland, if any, is directly related to the foreign patents, and not to the merits of the invention.

Defendant also warns of the many problems which will result if evidence of commercial success in foreign countries is permitted to be used in patent suits in this country. Specifically, the defendant urges that:

If alleged commercial success in Europe, in situations unconnected with exports or imports across the United States borders, were routinely discoverable by taking depositions in Europe to bolster a 35

U.S.C. § 103 unobviousness argument, then why not also by taking depositions half-way across the world, e.g., in Australia or Taiwan, for that purpose? Such a precedent would greatly increase the cost of patent litigation in general and thus would not be in the interest of the U.S. patent system.[2]

During a telephonic conference call on February 18, counsel for plaintiff explained that the depositions of the various British and Dutch citizens had taken months to arrange and any delay in the February 21 date could result in putting over the depositions for many months. It was, accordingly, agreed that the depositions would go forward as scheduled on February 21, but that, if defendant's motion was ultimately allowed, plaintiff would absorb all costs associated with counsel for defendant's travel to London, England. On the other hand, if defendant's motion was ultimately denied, it was also understood that defendant would pay its own costs. See the undersigned's letter of February 22, 1983, to counsel.

Finally a hearing, which was attended by counsel of record, was held on March 23, 1982, to provide counsel an opportunity to bring additional facts and arguments to the attention of the court.

### Discussion

The purpose of resorting to commercial success is, of course, to demonstrate that the invention covered by a patent was not obvious at the time that it was conceived. The theory underlying the doctrine is that an invention enjoys commercial success because a need for the invention existed. From the existence of this need and the readily available rewards, courts have been urged to conclude that a plaintiff's invention must be patentable, since the need would have been filled by others, at a much earlier date, if the solution was obvious. Put another way, courts are urged to conclude that an invention which enjoys com-

**2.** See defendant's February 4, 1983, reply to plaintiff's opposition to defendant's motion to vacate plaintiff's notice of depositions in Europe, at 9.

mercial success is nonobvious for, if the invention were obvious to make, it would have been discovered and exploited in the marketplace long before plaintiff came along.

It is conceptually difficult to understand why the success of an invention to show its nonobviousness should be confined to the territorial limits of any one country. Certainly, the fact that an invention is commercially successful, regardless of where such success occurs, can be helpful in attempting to resolve the issue of nonobviousness is beyond dispute. *See H.W. Gossard Co. v. J.C. Penney Co.,* 304 F.2d 515 (7th Cir.1962). This is not to say that a court should be blinded to other factors which may contribute to the commercial success of an invention, such as extensive advertisement campaigns, price discounts for the patented item, or promotional schemes which enhance the commercialization of the invention without in any way evidencing a long-felt need for the device. In addition, courts should, of course, be mindful of the necessity of the patentee to show that the success is attributable to the claimed invention and not to these other factors. *See Douglas v. United States,* 206 Ct.Cl. at 107, 510 F.2d at 370.

At the hearing the main thrust of defendant's opposition appeared to be directed at the awesome burden and expense which would be imposed upon a defendant to try to defend against a "foreign-based" claim of commercial success. Defendant argued that permitting plaintiffs to claim "foreign-based" commercial success would require defendants to travel to remote countries to gather facts which are necessary to muster the usual defenses against claims of commercial success.

Defendant's contention that the use of foreign-based commercial success arguments would create an overwhelming burden is not totally convincing since, at least with regard to the Claims Court, the inventions in suit are usually highly sophisticated, and ones which, like in the instant case, most probably will be used by foreign governments. Thus, defendant's search for

defenses should be considerably easier than defendant contends, for it will be dealing, in the usual case, with sophisticated customers in a specialized market.

A careful reading of the cases relied upon by both the plaintiff and the defendant are not conclusive of the issue to be decided. However, other cases have permitted evidence of foreign sales into the record for consideration, albeit not controlling, on the issue of nonobviousness. The case of *Sterling Drug, Inc. v. Brenner,* 256 F.Supp. 1000 (D.D.C.1966), clearly states, at 1002:

> Evidence of commercial success of a pharmaceutical compound in a foreign country is entitled to consideration as a material, but not controlling, factor bearing on the obviousness of a claimed invention.

Similarly, our predecessor court, in *Weather Engineering Corp. v. United States,* 222 Ct.Cl. 322, 614 F.2d 281 (1980), looked to the use of plaintiff's invention in foreign countries, but upon finding the evidence to be wanting, concluded that the patent was invalid.

It also appears that the district court in *Hunt Industries, Inc. v. Fibra Boats, Inc.,* 299 F.Supp. 1145, 1149 (S.D.Fla.1969), and the district court in *Rosen v. Lawson-Hemphill, Inc.,* 399 F.Supp. 532, 547 (D.R.I. 1975), *aff'd* 549 F.2d 205 (1st Cir.1976), also has permitted the use of foreign-based commercial success evidence in an infringement trial in this country.

Having carefully considered the arguments of counsel, it appears that there is nothing which precludes the use of a "foreign-based" commercial success argument in this court. Defendant's arguments concerning the cost and burden of defending against such a claim does not speak to the threshhold issue of whether a foreign-based commercial success argument should or should not be permitted as a matter of law, but rather are considerations that can and should be evaluated under USCCR 26(c) to prevent the abuse of discovery by a plaintiff in pursuit of commercial success evidence.

Accordingly, it is concluded that sales in foreign countries can be useful to assist the court in resolving the question of obviousness, and such evidence is thus relevant. Having concluded that sales information to foreign countries is relevant to the question of commercial success, defendant is to pay its own costs for attending the depositions in London.