**TRUSWAL SYSTEMS CORP.,**
Appellant,

v.

**HYDRO–AIR ENGINEERING,**
**INC., Appellee.**

Appeal No. 86–1390.

United States Court of Appeals,
Federal Circuit.

March 11, 1987.

Jack C. Goldstein, Arnold, White & Durkee, of Houston, Tex., argued, for appellant. With him on the brief, was Timothy N. Trop.

Michael E. Godar, Senniger, Powers, Leavitt & Roedel, of St. Louis, Mo., argued, for appellee. With him on the brief, was Stuart N. Senniger.

Before MARKEY, Chief Judge, RICH and SMITH, Circuit Judges.

MARKEY, Chief Judge.

Appeal from an order of the United States District Court for the Eastern District of Missouri granting Hydro-Air Engineering, Inc.'s (Hydro-Air's) motion to quash a subpoena served by Truswal Systems Corp. (Truswal). No. 86 Misc. 178 (E.D.Mo. May 16, 1986). We vacate the order in part and remand.

## Background

Truswal owns U.S. Patent Re. 31,807 ('807 patent), entitled "Truss-Web Connectors", issued January 22, 1985 to James Knowles. The claimed invention relates to wooden truss-like joists for use in constructing floors and roofs.

On January 22, 1985, Truswal sued Gang-Nails Systems, Inc. (Gang-Nails) in the Southern District of Florida, No. 85-171-Civ. (Florida action), for infringement of the '807 patent. That same day, Truswal wrote to Hydro-Air, accusing it of infringement. Because of the venue statute, 28 U.S.C. § 1400(b), Truswal could not sue both alleged infringers in the same action. Though Hydro-Air had protested issuance of the '807 patent in the Patent and Trademark Office under 37 C.F.R. § 1.291, it neither intervened in the Florida action nor sought a declaratory judgment in any court.

On April 29, 1986, Truswal served notice in the Florida action that it would depose officers of Hydro-Air in St. Louis, Missouri on May 16, two weeks before the date set for completion of non-expert discovery in the Florida action. On May 1, the Missouri district court issued a subpoena ordering Hydro-Air to designate an officer to testify and to produce documents relating to its product samples, drawings, manufacturing methods, the design and operation of its product, comparative test data, and sales information.

On May 12, Hydro-Air moved to quash pursuant to Fed.R.Civ.P. 45(b), on the grounds that "the information sought is not reasonably calculated to lead to the discovery of admissible evidence in the pending litigation, and that the discovery of such information would be unreasonable, unduly oppressive and burdensome."

At a May 16 hearing, the parties agreed to delete some demands from the subpoena, leaving only those for test data and sales information. Hydro-Air argued that the test data and sales information is confidential and would not be adequately protected by any protective order, including one employed in the Florida action and proposed by Truswal for use here. Truswal asserted that Hydro-Air's comparative testing and sales information is relevant to its proof in rebuttal of an anticipated defense of obviousness of the '807 patent in the Florida action. Because neither party submitted testimony or affidavits, the record consists solely of attorney argument and colloquy.

On that same May 16, the district court issued an order which in its entirety reads:

IT IS HEREBY ORDERED that the motion of Hydro-Air Engineering, Inc. to quash the subpoena duces tecum served upon it by plaintiff be and is granted with respect to the requested sales information and product test results.

Plaintiff at a hearing held May 16, 1986 presented the Court with case authority in which records of sales by party-defendants of allegedly infringing products were held discoverable as leading to evidence of commercial success of the patented product. None of these cases supports production of this information by non-party witnesses.

The part of the order quashing the subpoena for comparative test data remains unchallenged. Truswal appeals from only that part of the order that quashes the subpoena for Hydro-Air's sales information. That part of the subpoena sought:

Any and all documents relating to the dollar amount and number of units sold of Posi-Strut v-shaped metal web connectors by year or month, or if such documents do not exist then any and all documents showing the dollar amount and number of units sold of Posi-Strut v-shaped metal web connectors.

The part of the subpoena on appeal also sought the testimony of a person on:

The number of units and dollar value of all sales of v-shaped metal web connectors sold by Hydro-Air or any related company from March 14, 1978 to date.[*]

ISSUE

Whether on the present record the district court abused its discretion in granting the motion to quash the subpoena for the sales information sought.

OPINION

A. *Appealability*

■ Truswal appeals an order quashing a subpoena issued to a nonparty. The order was entered in a supplementary proceeding brought in one district to obtain evidence for use in an action pending in another. Because a party in Truswal's position would effectively be denied appellate review, courts of appeals have uniformly held such orders final and appealable. *See, e.g., Heat & Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 228 USPQ 926 (Fed.Cir.1986); *Ariel v. Jones,* 693 F.2d 1058 (11th Cir.1982); *National Life Insurance Co. v. Hartford Accident and Indemnity Co.,* 615 F.2d 595 (3d Cir.1980); *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551 (2d Cir.1967); *Horizons Tita-*

*nium Corp. v. Norton Co.,* 290 F.2d 421 (1st Cir.1961); *see also* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 110.13[2], at 157 (1986) (*Moore's Federal Practice* ); Annot., 36 A.L.R.Fed. 763, 840 (1975).

B. *Quashing the Subpoena*

An order quashing a subpoena is not unique to patent law. Hence, we would normally apply the law of the Eighth Circuit to the merits of the order. *Heat & Control, Inc.,* 785 F.2d at 1022 n. 4, 228 USPQ at 929 n. 4; *Panduit Corp. v. All States Plastic Manufacturing Co.,* 744 F.2d 1564, 1572–75, 223 USPQ 465, 469–72 (Fed.Cir.1984). Because there is a dearth of Eighth Circuit case law applicable to the merits of the appealed order, however, we must look to other regional circuits and to the Federal Rules of Civil Procedure. *See Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 875, 228 USPQ 90, 99–100 (Fed.Cir. 1985).

The Federal Rules of Civil Procedure allow examination of a deponent concerning "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b). Rules 30 and 31 provide that "any party may take the testimony of *any person,* including a party...." Rule 30(b)(6) requires a subpoenaed nonparty corporation to designate a person to testify and that such person "shall testify."

Rule 45(d)(1) provides that a "person" served a discovery subpoena may move either for a protective order under Rule 26(c) or for an order quashing or modifying the subpoena under Rule 45(b). Rule 26(c) authorizes district courts, upon a showing of "good cause" by "a *party or by the person* from whom discovery is sought" to "make any order which justice requires to protect *a party or person* from annoyance, embarrassment, oppression, or undue burden or expense including one or more of the following: (1) that the discovery not be had;

---

[*] The subpoena does not specifically demand the names of customers, unit prices, profit margins or similar data. The record does not reflect consideration of whether a statement of number of units and dollar value under oath by a Hydro-Air officer, without submission of documents, may be sufficient, the information being assertedly sought for use only in relation to commercial success.

... (7) that a trade secret or other confidential research, development, or *commercial information* not be disclosed or be disclosed only in a designated way." (Emphasis added.) Rule 45(b) provides that the court may "quash or modify the subpoena if it is unreasonable and oppressive."

Hydro-Air moved to quash under Rule 45(b) (which relates to trials and subpoenas for documents) and thus undertook the burden of showing that the subpoena is unreasonable and oppressive. "The burden is particularly heavy to support a 'motion to quash as contrasted to some more limited protection.'" *Westinghouse Electric Corp. v. City of Burlington*, 351 F.2d 762, 766 (D.C.Cir.1965) (denying a motion to quash supported by two affidavits); *Horizons Titanium Corp.*, 290 F.2d at 425; *see Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403–04 (D.C.Cir.1984). The district court must balance "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Heat & Control, Inc.*, 785 F.2d at 1024, 228 USPQ at 931 (citing *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 560, 564 (7th Cir.1984)); 5A *Moore's Federal Practice*, ¶ 45.05[3], at 45–44. Orders on motions to quash subpoenas are reviewed under an abuse of discretion standard. *Heat & Control, Inc.*, 785 F.2d at 1022, 228 USPQ at 930; *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.1975).

### C. *The Order*

It is apparent from the order that the district court based its decision solely on Truswal's failure to cite case authority supporting discovery "of this information" from a nonparty witness. Hydro-Air argues that it is immune from giving its evidence for that reason alone. Nothing in the Rules, however, makes controlling a distinction between parties and nonparties in respect of the type of information sought.

As above indicated, the Rules are applicable to a party and to a "person." The Federal Rules do distinguish in some cir-

cumstances between parties and nonparties regarding the manner in which information is to be obtained. For example, Rule 33 allows interrogatories to be directed only to parties. However, Rule 45 is applicable to "any person" (Rule 45(f)), and *Heat & Control, Inc., Ariel, National Life Insurance Co., Republic Gear Co.*, and *Horizons Titanium Corp., supra*, dealt with subpoenas served upon nonparties. In assessing the burden of complying with a subpoena, a court may consider as one factor that a deponent is not a party. *See Richards of Rockford, Inc. v. Pacific Gas & Electric Co.*, 71 F.R.D. 388, 390 (N.D.Cal.1976); *cf. Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1277 (7th Cir.1982); *U.S. International Trade Commission v. E. & J. Gallo Winery*, 637 F.Supp. 1262, 1272 (D.D.C.1985). The administration of justice would not be aided, however, by a rule relieving all persons from giving particular evidence on the sole ground that they are not parties to the suit.

Nothing in the order indicates that any balancing was done between relevancy of and Truswal's need for the information sought, on the one hand, and Hydro-Air's potential hardship on the other hand. Nor did the district court say whether it considered the subpoena "unreasonable or oppressive." Fed.R.Civ.P. 45(b)(1). Nor did the district court refer to payment of costs. Fed.R.Civ.P. 45(b)(2). Nor did the district court articulate any of the concerns expressed in Rule 26(b)(1)(i), (ii), or (iii). Nor does the order refer at any point to the potential for use of a protective order under Rule 26(c).

 Neither party cited case authority dealing with the discovery of sales information from a nonparty. That a case is one of first impression, however, is not itself a ground for decision, for that way lies stultification of the law. If failure to cite supporting case law were an appropriate basis for decision, the failure of Hydro-Air to do so, who bore the burden on its motion to quash, would have required denial of that motion. The grant by the district court of Hydro-Air's motion to quash, on the sole ground of Truswal's failure to cite cases

supporting production of sales information by a nonparty, constituted an abuse of discretion.

Hence the matter must be remanded for reconsideration and exercise of its discretion by the district court in light of what is said here. Because the present record supplies no evidentiary basis for quashing Truswal's request for the sales information, Hydro-Air failed to carry its burden of supporting its motion to quash under the Federal Rules. It will be for the district court to determine what, if any, further proceedings may be required.

We do not here hold that all demands for sales information from nonparties must be satisfied in all cases. We hold only that the district court abused its discretion in this case when it quashed the subpoena for sales information on the sole ground that Truswal cited no case dealing with discovery of such information from nonparty witnesses.

Though the district court's order cannot stand, we discuss the parties' arguments.

Having moved under Rule 45(b), Hydro-Air nonetheless made only the bald statement that the subpoena is "unreasonable and oppressive," submitting no affidavit and no evidence at the hearing. We reject the unsupported statements of counsel, made at oral argument before us that the subpoena is overly broad and thus burdensome. Arguments of counsel are not evidence.

Hydro-Air's other arguments are actually based on Rule 26, being directed toward a showing of "good cause" for an order that "the discovery should not be had," Rule 26(c)(1), or "the commercial information not be disclosed," Rule 26(c)(7). Upon careful review of the arguments presented, whether the motion to quash be considered as having been made under Rule 45 or Rule 26, we are, as above indicated, persuaded that Hydro-Air did not in this case carry the burden of one who moves to quash a subpoena.

Hydro-Air argues on appeal that: (1) the sales information is confidential business information that should not be disclosed to its two biggest competitors; (2) the sales information is of "questionable relevance" to Truswal's Florida action; and (3) disclosure of the sales information, even under a protective order, would prejudice Hydro-Air because, as a nonparty, it has no right to participate in the Florida action.

### 1. Confidentiality

Truswal argues that Hydro-Air's reliance on counsel's unsupported arguments did not carry its burden of establishing confidentiality. We need not here resolve that dispute. For present purposes, confidentiality of the sales information sought may be presumed.

The normal and expected reluctance of business firms to disclose sales information, however, is in itself an insufficient basis on which to deny discovery of that information under appropriate protection from divulgement to competitors. That information is no less sensitive than the trade secrets divulged under a protective order in *Heat & Control, Inc., supra.*

Hydro-Air refused to accept any type of protective order, no matter how effective it might be in limiting disclosure to counsel and to the Florida court *in camera* and in preventing disclosure to Hydro-Air's competitors. Yet it is precisely the purpose and function of a protective order to protect confidential information, i.e., if the information were *not* confidential there would be less or no need for a protective order.

We will not assume that counsel would breach the duty of an officer of the court by disclosing the sales information to Truswal or to any Hydro-Air competitor in violation of a protective order.

### 2. Relevance

Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial. *Heat & Control, Inc.,* 785 F.2d at 1024, 228 USPQ at 931 (citing *Centurion Industries, Inc. v. Warren Steurer & Associates,* 665 F.2d 323, 326 [10th Cir.1981] ). A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be

"especially hesitant to pass judgment on what constitutes relevant evidence thereunder." *Horizons Titanium Corp.*, 290 F.2d at 425. Where relevance is in doubt, the rule indicates that the court should be permissive. *Heat & Control, Inc.*, 785 F.2d at 931, 228 USPQ at 931.

Unlike procedural aspects of this appeal, a determination of relevance implicates the substantive law of patent validity and infringement. Hence, we look to Federal Circuit law, as opposed to that of the Eighth Circuit, in assessing relevance. Truswal argues before us that the information sought is relevant to the validity of the '807 patent and to damages. Because Truswal never presented its damages assertion to the district court, however, we will not consider that assertion.

Hydro-Air argues that the sales information is: a) cumulative because Gang-Nails offered to stipulate commercial success; b) probative only if Truswal can establish that Hydro-Air's product infringes and that its sales were due to the patented features; and c) unimportant because "commercial success is only a 'secondary' consideration." None of those arguments has merit.

Gang-Nails could not have stipulated to Hydro-Air's sales. Nor would the offered stipulation establish the level of commercial success of the patented invention. Thus the information is not cumulative.

■ Whether Hydro-Air's sales information is "probative" is of no concern at this stage. What counts is whether the "information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). It is for the Florida court to determine whether Hydro-Air's sales information is probative, when and if the deposition disclosing that information is offered in evidence at trial. Fed.R.Civ.P. 32. No useful purpose would be served in converting every hearing on a motion to quash a subpoena for sales information into a full-fledged trial on infringement and bases of sales, issues that will be decided by the Florida court if the sales information is offered in evidence at the trial. One may not, and is unlikely to, demand such information on products total-

ly and clearly remote from the claimed invention. Here, Hydro-Air's product has been charged as an infringement and Hydro-Air has protested the issuance of the '807 patent.

Since at least *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966), the commercial success of a patented invention is clearly important. That evidence is "secondary" in time does not mean that it is secondary in importance. Hydro-Air's argument reflects an inappropriate disregard of this court's precedents. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed.Cir.1983) ("evidence of secondary considerations may often be the most probative and cogent evidence in the record"); *see also Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 315, 227 USPQ 766, 770 (Fed.Cir.1985); *W.L. Gore & Associates, Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1555, 220 USPQ 303, 314 (Fed.Cir.1983), *cert. denied*, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

Before the district court, Hydro-Air relied on *Burndy Corp. v. Sealectro Corp.*, 214 F.Supp. 581, 137 USPQ 303 (S.D.N.Y. 1962), decided before *Graham*, for the proposition that a patentee is not entitled to discover an alleged infringer's sales until the patentee has established a right to an accounting. *See also Molinaro v. Lafayette Radio Electronics*, 62 F.R.D. 464, 466, 182 USPQ 548, 549 (E.D.Pa.1973); *Gordon Johnson Co. v. Hunt*, 102 F.Supp. 1008, 1011, 92 USPQ 225, 227 (N.D.Ohio 1952) (sales have remote bearing on validity, primarily concerns damages and thus its discovery not allowed until infringement established). Again, counsel disregards our precedents. One of our predecessor courts (whose decisions bind us, *South Corp. v. United States*, 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982)) has rejected *Burndy Corp.* in *Lemelson v. United States*, 225 Ct.Cl. 753, 756–57, 208 USPQ 883, 885 (1980). *See also Kaufman v. United States*, 173 USPQ 806 (Ct.Cl.1972).

### 3. Prejudice

■ Hydro-Air argues that a favorable ruling for Truswal in the Florida action

would severely prejudice Hydro-Air in any future litigation. It says it has "no opportunity" to participate in the Florida action, where it might prove its sales information is not probative, and that Gang-Nails may not be able to do so.

Hydro-Air admitted at oral argument here that it never considered intervening in the Florida action. Had it done so, it would have unearthed Rule 24(b)(2) permitting intervention if Hydro-Air's "defense and the main action have a question of law or fact in common." Hydro-Air has been charged with infringement and it appears that any motion to intervene in the Florida action would be unopposed by Truswal. Moreover, having been charged with infringement, Hydro-Air would appear in position to sue for declaratory judgment and seek consolidation with the Florida action. There is, of course, no obligation or duty to seek intervention or to sue, but Hydro-Air's "no opportunity" argument is fallacious.

If Hydro-Air is not a party in the Florida action, a ruling favorable to Truswal would be of no binding effect on it. Further, if supplying the information assured Truswal of a "full and fair opportunity," and the '807 patent is held invalid in the Florida action, Hydro-Air would benefit. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971). Hydro-Air has shown no basis in this record for a finding of prejudice resulting from disclosure of its sales information under a fully protective order.

## CONCLUSION

If the district court on reconsideration remains of the view that an order to quash is appropriate, it must provide an articulation of reasons why disclosure of the sales information sought under a suitable protective order would be unreasonable and oppressive. Though the present order quashing the present subpoena constitutes an abuse of discretion, *Heat & Control, Inc.,* 785 F.2d at 1022, 228 USPQ at 930, and cases cited therein, we refuse Truswal's request that we design and impose a protective order. Nothing of record precludes

the district court from promptly exercising its discretion in crafting an appropriate protective order, incorporating such limitations and conditions as it deems appropriate on discovery and on the use and disclosure of the sales information obtained in response to the subpoena.

We decline Truswal's invitation to impose a sanction on Hydro-Air under Fed.R. App.P. 38.

The part of the order quashing the subpoena for sales information must be vacated, and the case must be remanded to the district court for consideration and entry of an appropriate order.

VACATED IN PART and REMANDED.

RICH, Circuit Judge, dissenting.

I dissent from the decision vacating the order quashing the subpoena and also from the suggestion to the Missouri District Court that it can craft a suitable protective order. This order is an impossibility. In all respects the majority is being unrealistic, impractical, and its holding is likely to encourage abuse of the discovery process.

There are some facts that are self-evident. One of them is that competitive business is a kind of economic warfare. A corollary of that, as every lawyer old enough to become a federal judge has learned from serving his business clients, is that close competitors do not usually hand out their sales statistics to one another but regard them as confidential and sensitive information which they often go to great pains to hide. That is a *fact* well enough known for a court to judicially notice, at least when they send their lawyers to oppose disclosure, and Judge Gunn, who quashed the subpoena seemed instinctively aware of it when it was pointed out to him by Hydro-Air's counsel. He needed no evidence and no evidence was required to justify his action.

Another incontrovertible fact is that there can be no such thing as a protective order which will protect a company which has been forced to hand over its sales statistics *to its competitor* from what it is interested in being protected from—disclo-

sure of its sales from its competitor. It is as obvious as the fact that once a secret is out, it is no longer a secret. The majority here appears naive. If it thinks otherwise, I suggest it try drafting the order as an instruction to the district judge.

One should have clearly in mind the situation before us. It is *now* reduced to an attempt to discover only Hydro-Air's *sales* statistics but that is not how it all began and was not the situation as it was before Judge Gunn. The subpoena Truswal prepared asked for many other things: a sample of every model of strut made by Hydro-Air; all drawings it used in making the struts and drawings of the dies used; all documents relating to sales amounts; all documents relating to testing or comparative testing with Truswal or Gang-Nail systems; and testimony on the design, operation and methods of manufacture of Hydro-Air's V-shaped metal web connectors. For a competitor to ask all that of a non-party was, of course, bound to elicit a motion to quash and a supporting memo which was filed before the district court judge who then held a hearing on May 16, 1986 at which attorneys for Truswal and Hydro-Air appeared. The subpoena was not entirely unproductive nor was Hydro-Air entirely uncooperative. There had been some agreement the day before the hearing between counsel and Truswal got samples, information on when models were first sold, and possibly other information not clear from the appendix before us. But on sales statistics and testing results they balked and the judge's order, quoted in full by the majority, shows that Judge Gunn granted the motion to quash with respect to "the requested sales information and product test results." The objections to the latter were that Truswal had no need for them in the Gang-Nail suit and that they would invade Hydro-Air's confidential research procedures. Judge Gunn did the *balancing* of "the potential hardship to the party against whom discovery would be granted with that to the party to whom discovery would be denied," called for by Fed.R.Civ.P. 26(b)(1), as amended in 1983 to minimize discovery abuse. *Heat & Control, Inc. v. Hester Industries Inc.*, 785 F.2d 1017, 1023–24, 228 USPQ 926, 931 (Fed.Cir.1986).

Judge Gunn thus acted reasonably and within the law and sustained the motion to quash only on sales figures and tests, which appellant has now reduced on appeal to the single item of sales information by electing not to argue for the test results.

With respect to the issue to be decided, the majority opinion, like appellant's brief which it tracks, leaves me in a quandary. Are we to decide whether appellant Hydro-Air carried its burden before Judge Gunn, where it obviously succeeded, or are we to decide whether Judge Gunn abused his discretion? This appeal is not like one bringing before us, for example, a lower court ruling on obviousness where the question is whether a party sustained its burden of overcoming the presumption of patent validity, where we decide whether the burden was or was not sustained. Obviousness is a question of law and that is what we have to do. The decision here was one under the Federal Rules of Civil Procedure—not a question of law—which leave to the *discretion* of the trial judge (or his surrogate in another jurisdiction) what he is going to allow to be discovered and under what conditions. The judge has rendered his decision against Truswal (at least in part) and we are not concerned with whether or not the "heavy burden" on Hydro-Air was sustained. It was. Our only duty is to determine *whether discretion was abused* and we start from there. The majority's discussion of cases on the burden of the moving party before Judge Gunn is irrelevant to that task. At least, that is how it appears to me; why else are we talking about review "under an abuse of discretion standard," as the majority says? What else is there to review? And why is the majority "persuaded that Hydro-Air did not carry the burden" before Judge Gunn. There is an utter inconsistency in making both of those pronouncements. Judge Gunn's order proves conclusively that Hydro-Air carried its burden.

It appears to me that Truswal dropped everything from its subpoena except the sales figures (except for the information

Hydro-Air voluntarily gave it) because it knew full well that it could not support its requests. It seems still to have, however, a passionate desire for knowledge of its competitor's sales but its reasons, as argued before us, for allegedly needing them to sustain its case against Gang-Nail in the Florida suit won't pass inspection. The same is true of the majority's arguments.

Truswal's main legal point for allegedly needing sales figures from Hydro-Air is that in the Gang-Nail suit the validity of its patent *may* be at stake on the issue of obviousness, *in which case* it would need *all* the evidence it can get of the so-called "secondary consideration" of commercial success to bolster up the unobviousness of the patented invention. It colors that argument further by referring to its one-shot opportunity to sustain validity in view of *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). If it had two dozen or two hundred competitors who allegedly had copied its patented structure, instead of only the two of record, I suppose it would argue it would need all their sales statistics also. This is transparently not the case and demonstrates, moreover, the obvious danger to the business community in giving Truswal access to a principal competitor's confidential sales data. All one would have to do to get a competitor's sales information would be to sue one of them and serve subpoenas asking for it on the others, saying it might be needed in the suit to defend against an obviousness defense.

Now, as a matter of common sense, the way one proves commercial success of a patented invention is, first, to demonstrate the success of the patentee or one or more licensees. Second, once an infringer is sued *and proved to be an infringer*, its sales are appropriately proved and added to the others. If in fact there is widespread copying, the copying is proved, which is another telling secondary consideration. Proof of *all* the infringement that exists *is never necessary*. It is merely cumulative evidence. Furthermore, it *is* necessary to establish that the alleged copies are actual infringements of the patent in suit before they can possibly be relevant and counted as successes *of the patented invention.* So far in this case, not one infringement has been proved.

I note in this connection that appellant's brief begins by introducing us to the fact that there are three competitors in the field, plaintiff Truswal, defendant Gang-Nail, and Hydro-Air. Truswal holds patent 4,078,352 which was reissued, Gang-Nail holds patent 4,485,606, and Hydro-Air holds patent 4,348,850. Of course, the products all differ somehow. We are not enlightened further as to *what* the patents of anyone cover or what the differences are. It is far from clear that it can be established that what Hydro-Air sells could be established as commercial success of *Truswal's* patented invention as claimed in the reissue patent in the Florida suit.

These facts Judge Gunn took into account and *balanced* them, as the rule requires him to do, against the unfairness of compelling Hydro-Air to divulge its sales figures to its competitor Truswal. He had a full grasp of the situation and he was not required to make "findings." He asked two very pertinent questions:

THE COURT: As far as the case in Miami [against Gang-Nail] is concerned, how important is that [sales] information? It's not really very important from what I'm gathering, it's just you're saying it could add a little more weight? [Speaking to Mr. Trop, counsel for Truswal.]

\* \* \* \* \* \*

THE COURT: What about a protective order on the sales? Can there be any protective order?

MR. SENNIGER [For Hydro-Air]: Issuing from this court, Sir?

THE COURT: Any court.

The majority, tracking appellant's brief, complains that Hydro-Air submitted no affidavit and no evidence before Judge Gunn, saying "Arguments of counsel are not evidence." It seems to be on that basis that it holds, unjustifiably and irrelevantly, that Hydro-Air did not "carry the burden," which, I have pointed out above, is *not* the

**1216**

issue we have to decide. Of what use would an affidavit or some testimony be to establish what is self-evident? Competitors usually play their cards close to their chests, consider sales figures confidential, and resent having to divulge them. Nonparties like Hydro-Air should not be made to disclose them unless it serves some essential purpose in the trial. See *Heat & Control,* supra.

It is an interesting aspect of this case that appellant could not find what it calls a "white horse" case involving a patentee's efforts to obtain discovery of allegedly infringing sales by a non-party for use in a patent infringement case against another. The majority has not found one either. Therefore, this case is by way of establishing for the first time a precedent in this court, which is this case. It concerns me greatly that this majority opinion should become the precedent, because it will be troublesome.

As I read the majority opinion, its finding of "abuse of discretion" resides in Judge Gunn's failure to "articulate" the proper magic words indicating what is obvious to me from the reported hearing he conducted and order he wrote. In other words, the majority is here imposing a requirement for a certain amount of mumbo jumbo in the order, on top of the 15 pages of reported hearing, to show that the judge (1) *balanced* the contentions of both sides; (2) *considered* the appropriate conditions of Fed.R.Civ.P. 26(b)(1) under which he was operating; (3) *applied* one or more of them; (4) *decided* upon the impracticality of a protective order; and (5) preferably can cite a case or two, if any are known. Such a requirement is contrary to the spirit of the Federal rules of procedure which decry formalities and rituals.

I see no reason, on the clear record before us, to conclude that Judge Gunn did not exercise his discretion in strict accordance with the applicable rules and on an adequate showing. We can review what he did, but I view it as a total waste of judicial time to tell him to do it again and say more.

I would affirm.