**Jack D. SPELLER, Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**No. 116–85C.**

United States Claims Court.

Jan. 13, 1988.

Harold James, New York City, for plaintiff.

Joseph A. Hill, with whom were Asst. Atty. Gen. Richard K. Willard and Vito J. DiPietro, Washington, D.C., for defendant.

Frederick A. Lorig, P.C., Los Angeles, Cal., for third party Litton Industries, Inc.

## ORDER

BRUGGINK, Judge.

Pending before the court is the October 14, 1987 motion of non-party Litton Industries, Inc. ("Litton") to Quash Subpoena as it relates to plaintiff's written deposition question # 3(a).[1] Alternatively, Litton asks for a protective order to deny this discovery until after liability is established by plaintiff ("Speller"). After consideration of the parties' submissions regarding the propriety of question # 3(a), including supplemental briefs discussing the impact of two recent decisions of the Court of Appeals for the Federal Circuit, *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734 (Fed.Cir.1987); *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207 (Fed. Cir.1987), the court concludes that Litton's motion should be denied.

Speller seeks discovery of Litton's sales data regarding ring laser gyroscopes ("RLG's"), the alleged infringing invention.[2] Specifically, Speller's written deposition question # 3(a) asks Litton to disclose, "by year, the number of RLGs provided to any entity other than the United States Government and/or any of its agencies and departments." Speller desires this information as evidence of the commercial success of RLG's. Litton argues that the sales information is confidential and, if disclosed to a competitor, would harm Litton. Litton also alleges that RLG sales data is not relevant to the subject matter involved in the present action because Speller has failed to demonstrate a nexus between his invention and the commercial success of the RLG's; therefore, disclosure would not lead to the discovery of admissible evidence. Litton further argues that the information sought would be burdensome to obtain[3] and would be premature because it relates only to damages.[4] The Government supports Litton's motion.

To determine whether Litton's motion to quash should be granted, the court must balance "the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed.Cir.1986) (citing *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d

---

1. The motion originally raised objections to other discovery. The court's order of October 14, 1987 addressed these matters. All that remains for resolution is Speller's entitlement to information sought by question # 3(a).

2. RLG's are directional reference instruments used in navigation. They have been sold to private entities (such as aircraft manufacturers) and to the Government (the basis of this action). According to Speller, airplanes currently carry three or six RLG's.

3. Litton alleged generally in its October 14, 1987 motion, which related to discovery in addition to the information sought under question # 3(a), that certain documents sought by Speller would be burdensome to gather. Litton has not alleged in any subsequent submissions concerning the propriety of question # 3(a) whether that particular information would be burdensome to gather, nor was that specifically argued in the original motion. Accordingly, the court finds that Litton would not be unreasonably burdened in providing its RLG sales data.

4. By the court's order of July 14, 1987, the liability and damages phases of the action were bifurcated.

556, 560, 564 (7th Cir.1984)), *quoted in Truswal*, 813 F.2d at 1210; *see also American Standard, Inc.*, 828 F.2d at 741 ("Where a party seeking a protective order has shown that the information sought is confidential and that its disclosure might be harmful, the burden shifts to the party seeking discovery to establish that disclosure of trade secrets and confidential information is relevant and necessary to its case.").

## A. *Motion to Quash*

■ *1. Relevance*—Rule of the United States Claims Court ("RUSCC") 26(b)(1) provides:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action.... It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Relevance in a discovery context is construed more broadly than is relevance for trial. *See Heat & Control, Inc.*, 785 F.2d at 1024 (citing *Centurion Indus., Inc. v. Warren Steurer and Assocs.*, 665 F.2d 323, 326 (10th Cir.1981)), *cited with approval in Truswal*, 813 F.2d at 1211. "Where there is doubt over relevance, [Rule 26(b)(1)] indicates that the court should be permissive." *Heat & Control, Inc.*, 785 F.2d at 1024 (citing *Deitchman*, 740 F.2d at 566), *cited with approval in Truswal*, 813 F.2d at 1212.

The gravamen of this action is Speller's claim that his Patent No. 3,395,270, issued July 30, 1968 for a "Relativistic Inertial Reference Device," was infringed by inertial guidance devices manufactured for and used by defendant. Speller's complaint recites that the patent "relates broadly and specifically to a non-mechanical 'gyroscope' of the type that has come to be known as a ring laser gyro."

■ There are three legal requisites to patent validity: utility, novelty, and nonobviousness. *General Motors Corp. v. Toyota Motor Co.*, 667 F.2d 504 (6th Cir.1981),

*cert. denied*, 456 U.S. 937, 102 S.Ct. 1994, 72 L.Ed.2d 457 (1982); *Radio Steel & Mfg. Co. v. MTD Prods. Inc.*, 566 F.Supp. 609 (N.D.Ohio 1983), *aff'd in part and rev'd in part*, 731 F.2d 840 (Fed.Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984); *see Bowser, Inc. v. United States*, 181 Ct.Cl. 834, 840–41, 388 F.2d 346, 350–51 (1967); 35 U.S.C. §§ 101–103 (1982). Assuming that there is a nexus between the Speller patent and an RLG, then evidence of the commercial success of RLG's serves as a relevant secondary consideration in determining the nonobviousness of the patent. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–94, 15 L.Ed.2d 545 (1966); *Truswal*, 813 F.2d at 1212. This court in *Pacific Technica Corp. v. United States*, 2 Cl.Ct. 170, 172–73 (1983), explained how such evidence potentially bears on liability:

> The purpose of resorting to commercial success is, of course, to demonstrate that the invention covered by a patent was not obvious at the time that it was conceived. The theory underlying the doctrine is that an invention enjoys commercial success because a need for the invention existed. From the existence of this need and the readily available rewards, courts have been urged to conclude that a plaintiff's invention must be patentable, since the need would have been filled by others, at a much earlier date, if the solution was obvious. Put another way, courts are urged to conclude that an invention which enjoys commercial success is nonobvious for, if the invention were obvious to make, it would have been discovered and exploited in the marketplace, long before plaintiff came along.

*See also Graham*, 383 U.S. at 17–18, 86 S.Ct. at 693–94. In its answer, defendant, among other defenses, contends that if it is assumed that the patent in question describes a process or technology that is incorporated by the RLG, then the subject matter of Speller's claims was "obvious under the provisions of 35 U.S.C. § 103." Consequently, if Speller can prove at trial that the RLG invention incorporates his

patent, Litton's sales data indicating commercial success could be relevant in defending against a claim of the obviousness of the Speller patent.

One of the principal arguments advanced by both defendant and Litton to support nondisclosure is that the RLG's in question clearly do not infringe the patent; they assert that the Speller patent claims do not disclose a ring laser gyro. Consequently, both Litton and the Government argue that the requested discovery should be disallowed on relevancy grounds because Speller has failed to establish a nexus between the claimed invention and the RLG sales data.

In its motion to quash, Litton argues, "Mr. Speller's patent does not even mention lasers, much less teach one how to make ring laser gyroscopes. There is *no* disclosure of ring laser gyroscopes much less the best mode to make them." In fact, however, some of the claims in Speller's patent mention the use of lasers:

59. Apparatus according to claim 58, in which said wave amplifying element is a laser.

. . . .

100. Apparatus according to claim 99, in which said source of waves comprises a laser.

Moreover, there is some merit to Speller's argument that his description of using a laser as the source of radiation was adequate to inform those skilled in the art on how to employ a laser in his invention. Some of Speller's patent claims were initially rejected by the patent examiner on the ground that they relied on lasers and masers, which, the examiner felt, were not specified or illustrated, contrary to the requirements of 35 U.S.C. § 112 (1986). Speller filed an amendment to his patent dated September 27, 1966 in an attempt to overcome this objection. In it, he stated that the following language in the original patent specification was sufficient:

Among suitable sources of electromagnetic waves for devices of the type herein described, are those which produce preferably coherent radiation, that is, strictly a single frequency at a constant phase. There are sources of this kind available which are actuated by stimulated emission of radiation and are commonly known as "masers" and "lasers." The masers serve as sources and amplifiers of microwaves, while the lasers serve as sources and amplifiers of light.

After this amendment, the Patent Office accepted the previously disallowed claims.

In addition, Speller declares:

Here the Speller patent is a basic patent, going to the heart of the RLG operation. The claims in suit are drawn broadly to a particular novel way of handling radiation so that useful data can be obtained from devices of practical size. Devices functioning as gyroscopes on a relativistic basis were known before the Speller patent, but they had to be of football field size and hence had no practical application. The patent discloses and claims how to use the relativistic effect in connection with radiation in a particular fashion so that useful data can be obtained from devices that can be carried on an airplane....

Plaintiff's patent discloses and claims how to use radiation in order to accomplish that result. His broad claims read directly on all RLGs, including those obtained by the Government.

Plaintiff's Memorandum in Opposition to Litton's Motion to Quash Subpoena at 4–5. Although Litton and defendant make strong arguments that Speller's assertions are factually incorrect, they are not, on their face, illogical or implausible. More importantly, the court is not prepared, at this relatively early stage of discovery, to foreclose an otherwise relevant line of inquiry.

Litton has also argued that Speller cannot establish a nexus between the claimed invention and the information sought because factors unrelated to the claimed invention influenced RLG sales. *See American Standard, Inc.*, 828 F.2d at 742; *In re Vamco Mach. & Tool, Inc.*, 752 F.2d 1564, 1577 n. 5 (Fed.Cir.1985); *Pacific Technica*

*Corp.*, 2 Cl.Ct. at 173.[5] For example, Litton has alleged that the success of the RLG is due to the millions of dollars spent by Litton to develop and market its RLG's in the defense and aerospace community. While such evidence may ultimately persuade the court that the commercial success of the RLG had nothing to do with Speller's patent, it is premature to foreclose plaintiff from even attempting to use sales data to respond to defendant's argument of obviousness. These factual allegations are also more appropriately resolved at a later stage of the proceedings. As the Court of Appeals for the Federal Circuit cautioned in *Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1461 (Fed.Cir.1984), "All evidence must be considered *before* a conclusion on obviousness is reached." (emphasis in original).

At this stage of the proceedings, Speller must only "show *some relationship* between the claimed invention and the information sought." *American Standard, Inc.*, 828 F.2d at 742 (emphasis added). Based on the representations made by Speller in his submissions, and given the context in which the matter must be resolved—i.e., discovery—the court is persuaded that "some relationship" exists between the claimed invention and the RLG sales information and that the discovery requested is thus relevant.[6] In reaching this conclusion, the court is mindful of the substantial argument advanced by Litton and defendant that the critical components and methodologies necessary to RLG's were not new with Speller. They argue that several articles published before Speller's patent constitute "prior art" and thus demonstrate the obviousness or lack of novelty of Speller's invention. Speller argues that these articles were published too late to be considered prior art or else where not "enabling," i.e. inadequate to teach the invention. An examination of the technical data supporting and opposing the motion, however, makes it clear that an informed resolution will require disposition at trial or on a dispositive motion after extensive stipulation and argument. Any attempt at resolution of the present motion on the grounds advanced by Litton would be tantamount to a ruling on the merits, with none of the necessary procedural and evidentiary development. "[N]o full-fledged trial on infringement and nexus need be conducted at the discovery stage." *Id.* at 741 (citing *Truswal*, 813 F.2d at 1212).

*2. Speller's Need for the Sales Information*—"[O]ne seeking discovery of confidential sales information must ... establish that it is reasonably necessary for a fair opportunity to develop and prepare the case for trial."[7] *American Standard, Inc.*, 828 F.2d at 743. Speller desires Litton's RLG sales data as evidence of the commercial success of the claimed invention—evidence that serves to rebut defendant's claim of obviousness. Litton argues that the commercial success of RLG's, if relevant, can be proven by the U.S. Air Force and Navy's selection of ring laser gyros for their standard navigation unit (i.e., by sales to the Government rather than to private entities). Such evidence, however, would not establish the *level* of commercial success of the patented invention. *See Truswal*, 813 F.2d at 1212. As long as the information sought is not cumulative, which is the case here because Speller apparently has no other data regarding

5. In *Pacific Technica Corp.*, the court declared: [A] court should [not] be blinded to other factors which may contribute to the commercial success of an invention, such as extensive advertisement campaigns, price discounts for the patented item, or promotional schemes which enhance the commercialization of the invention without in any way evidencing a long-felt need for the device. In addition, courts should, of course, be mindful of the necessity of the patentee to show that the success is attributable to the claimed invention and not to these other factors.

2 Cl.Ct. at 173.

6. By concluding that Speller's representations evince "some relationship," the court does not resolve the validity of his allegations of infringement. Whether the "sales information is 'probative' is of no concern at this stage." *Truswal*, 813 F.2d at 1212.

7. The confidentiality of the requested information is dealt with below.

*Litton's* non-Government RLG sales, it is necessary to establish the level of commercial success.

 *3. Potential Hardship to Litton* —Litton alleges (through the affidavit of Jeremy B. Lewi, Director of Business Development, Aircraft Inertial Systems) that disclosure of its RLG sales information would be harmful because the information is confidential and, if disclosed to a competitor, would give that competitor an unfair advantage over Litton. Litton does not address, however, the nature of this unfair advantage. Moreover, Litton provides no support for the conclusory statement that its sales information is confidential; for example, Litton does not specify "measures [it] uses to keep secret the information sought and the value thereof as secrets." *American Standard, Inc.,* 828 F.2d at 740. For purposes of deciding this motion, however, the court will assume that Litton's sales information is confidential. The court makes this assumption primarily because Speller does not dispute the confidentiality of the information and because courts have generally viewed sales data as trade secrets or confidential information. *See American Standard, Inc.,* 828 F.2d at 740; *Truswal,* 813 F.2d at 1211.

Courts have presumed that disclosure of confidential sales information to a competitor is more harmful than disclosure to a noncompetitor. *See American Standard, Inc.,* 828 F.2d at 741 (and cases cited therein). Litton only claims that disclosure to a *competitor* would be harmful. Speller, however, is not a competitor of Litton. He is a retired individual (over seventy years old) who holds the patent that is allegedly infringed by the RLG. The court is not persuaded that disclosure of Litton's RLG sales information to Speller, with certain safeguards discussed below, would be harmful to Litton. In addition, the fact that Speller seeks only the number of RLG's sold and not the dollar figures undercuts any claim of harm to Litton.

Because Speller makes a plausible argument that there is a relationship between his patent and the RLG, the sales information sought is relevant and reasonably nec-

essary to refuting the defense of obviousness, and Litton's argument concerning prejudice is not persuasive, the court exercises its discretion to permit discovery. Litton's motion to quash is therefore denied.

## B. *Motion for a Protective Order*

Under RUSCC 26(c)(7), upon motion by a party or by the person from whom discovery is sought, the court may grant a protective order so "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." Litton asks (as an alternative to its motion to quash) for a protective order that would delay disclosure of the sales data until liability is established by Speller.

As stated previously, one seeking a protective order under RUSCC 26(c)(7) must establish that the information sought is confidential and that its disclosure might be harmful. *American Standard, Inc.,* 828 F.2d at 740–41. After these two facts are established, the burden shifts to the party seeking discovery to prove "that disclosure of trade secrets and confidential information is relevant and necessary to its case." *Id.* at 741.

For the reasons stated in Section A, *supra,* the court denies Litton's motion for a protective order insofar as it seeks to defer making any response. Although the information is presumptively confidential, its disclosure to Speller—a noncompetitor— would not be harmful to Litton. Moreover, it is inappropriate to defer discovery of the sales information until after Speller proves infringement at trial. The action has already been bifurcated to segregate liability from damages. To grant Litton's request would amount to a further bifurcation of liability, effectively requiring Speller to prove his case in stages. While there might conceivably be circumstances in which that is appropriate, it is not proper here in view of the court's findings on the lack of potential harm to Litton.

The court recognizes, however, that if the sales information was given to Speller without any restriction on its dissemina-

tion, a competitor could possibly obtain the data. Although the extent to which Litton would be harmed by the disclosure, to a competitor, of the number of RLG's it sold to non-Government entities is not clear, the court will take the affidavit of Jeremy B. Lewi at face value. Therefore, the following protective order is established: [8]

### Protective Order

(1) The number of RLG's provided by Litton Industries, Inc. to any entity other than the U.S. Government and/or any of its agencies and departments, stated by year, shall be classified as "protected information." "Protected information" shall be used solely for the purposes of this litigation and shall not be given, shown, made available, discussed, or otherwise communicated in any form to any one other than:

(a) current counsel of record for the plaintiff, his firm and its employees; counsel for the defendant, the Department of Justice and its employees; counsel for third party Litton Industries, Inc., his firm and its employees; and the Court and its employees.

(b) It shall be the responsibility of counsel to bring this order to the attention of all persons to whom they disclose protected information and to advise such persons that they are bound by the terms of this order. Persons to whom protected information is made available are bound by the restrictions in this order.

(2) No document (including motions, briefs, depositions, and exhibits) containing protected information shall be filed with the Clerk of the Court unless filed separately under seal in an envelope with a legend on the envelope and document substantially as follows: This envelope/document contains protected information. Disclosure or use of such information is restricted by Court order. This document is filed under seal.

Such documents shall be filed under seal and maintained under seal by the Court. No one other than persons described in subparagraph (a) of paragraph 1 shall have access to such material. Documents designated protected shall be photocopied or otherwise reproduced only if a log identifying the document and number of copies made is contemporaneously provided to counsel for Litton Industries, Inc.

(3) If any party wishes to disclose protected information to persons other than those referred to in paragraph 1 above, such party shall so inform counsel for Litton Industries, Inc., identifying the protected information to be disclosed. If the parties are unable to resolve any objection informally, the requesting party may submit such dispute to the Court for resolution. Until the Court resolves the dispute, the information so produced/designated shall be treated as protected information.

(4) Upon the conclusion of this action (including any and all appeals), counsel for each party and the Clerk in possession of protected information produced or filed by any other party or third party witness shall return all documents, and all copies thereof, containing protected information to the person or party producing it. Legal memoranda and briefs containing such information may be retained if protected information referred to therein is certified by counsel to have been expunged. Any work product documents prepared by counsel may be retained if counsel of record certifies that such documents shall be kept within the possession of private litigant's counsel of record or governmental entities referenced above and shall not in the future be disclosed.

---

**8.** *See Truswal,* 813 F.2d at 1211 ("The normal and expected reluctance of business firms to disclose sales information ... is in itself an insufficient basis on which to deny discovery of that information under appropriate protection from divulgement to competitors."). The court notes that Speller represented he is completely amenable to an "attorneys'-eyes-only" protective order.

(5) By providing any document or other information in its possession, neither party waives any privileges, objections, or protections otherwise afforded to it by law or equity.

(6) Any party may, after consultation with opposing counsel, apply to the Court for modification of or an exception to this order.

## CONCLUSION

For the reasons stated above, the court denies Litton's motion. Accordingly, Litton shall respond to Speller's written deposition question # 3(a) in conformance with the terms of this order.

It is so ORDERED.